IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARITZA RODRÍGUEZ FELICIANO

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 19-1095 (MEL)

**OPINION AND ORDER**

I.  **Procedural and Factual Background**

Pending before the court is Ms. Maritza Rodríguez Feliciano's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 22. On March 23, 2012, Plaintiff filed an application for Social Security benefits alleging that she initially became unable to work due to disability on March 23, 2012 ("the onset date"). Tr. 33. Prior to the onset date, Plaintiff worked as a "Cafeteria worker". Tr. 43. Plaintiff met the insured status requirements of the Social Security Act through September 30, 2015. Tr. 32, 35. Plaintiff's disability claim was denied on October 9, 2015 and upon subsequent reconsideration. Tr. 34.

Thereafter, Plaintiff requested a hearing which was held on July 20, 2016 before an Administrative Law Judge ("the ALJ"). Tr. 33. On August 25, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 45. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1–7.

Plaintiff filed a complaint on January 30, 2019. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 22, 25.

## II.     Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying

the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether

plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### C. The ALJ's Decision

In the case at hand, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through September 30, 2015. Tr. 32, 35. At step one of the sequential

4

evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the onset date of March 23, 2012 through her date last insured of September 30, 2015. Tr. 35. At step two, the ALJ determined that Plaintiff had the severe impairments of "[d]egenerative disk disease, blastomycosis, osteoarthritis, carpal tunnel syndrome, bronchial asthma, right should spur and tear status-post arthroscopy." Tr. 35. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 37. Next, the ALJ determined that during the relevant period:

> "[Plaintiff possessed] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb stairs or ramps but never ladders, ropes, or scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she can only occasionally rotate her right arm above shoulder height; she can frequently handle, finger, or feel bilaterally; she cannot tolerate extreme temperatures, humidity, vibration, or pulmonary irritants.

Tr. 38. At step four, the ALJ determined that during the relevant period, Plaintiff was not capable of performing her past relevant work as a "[c]afeteria worker". Tr. 43. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 43–44. The vocational expert testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: "cashier" or "inspector/hand packager". Tr. 44. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 44.

### III.  Legal Analysis

#### A. Whether the ALJ Erred in Her Step Two Severity Finding and Therefore in the RFC Determination

Plaintiff argues that at step two of the sequential evaluation, the ALJ erred by ignoring evidence in concluding that Plaintiff's depression was not a severe impairment. ECF No. 22 at

16–18. Plaintiff also argues that although the ALJ classified Plaintiff's mental condition as a non-severe impairment, the ALJ subsequently erred in not considering any limitations created by Plaintiff's mental condition while formulating Plaintiff's RFC. ECF No. 22 at 19–20.

While the claimant bears the burden of demonstrating that her impairments are severe, the step two severity finding is a *di minimis* hurdle for a claimant, solely designed to screen out groundless claims. McDonald v. Sec'y of Health & Human Servs*.*, 795 F.2d 1118, 1124 (1st Cir. 1986). A claimant's impairment is non-severe when medical evidence demonstrates that the impairment is only a slight abnormality which has no more than a minimal effect on the claimant's ability to work, without consideration of the claimant's age, education, or work experience. González García v. Sec'y of Health & Human Servs, 835 F.2d 1, 2 (1st Cir. 1987) (citing McDonald, 795 F.2d at 1124); Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985). When a claimant's case for benefits rests on a single impairment, the ALJ may read the record more generously and draw inferences that are more favorable to a severity finding so that the Plaintiff's claim does not end at step two. Hines v. Astrue, 2012 WL 1394396, at *12 (D.N.H. Mar. 26, 2012). However, the ALJ need not make such favorable inferences if there are other severe impairments that ensure that the claim will survive the step two *de minimis* hurdle. See id. If the ALJ finds that at least one of the claimant's impairments is severe, the step two inquiry is resolved in the claimant's favor and the ALJ may move ahead with the subsequent steps. Hickman v. Comm'r of Soc. Sec., 399 F. App'x 300, 302 (9th Cir. 2010).

Even if the ALJ erroneously found that some of the claimant's impairments are non-severe at step two, the error is harmless if the ALJ continues the sequential analysis and considers both the claimant's severe and non-severe impairments when formulating the RFC. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir.2007); Mason v. Astrue, Civ. No. 12-017, 2013 WL

391173 at *4 (D.N.H. Jan. 30, 2013); Hines, 2012 WL 1394396, at *12–13; 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . ."). Even so, the claimant bears the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). Harmless error means that the ALJ's mistake would not have been outcome determinative. See Colón v. Saul, 463 F. Supp. 3d 66, 75 (D. Mass. 2020) (citing Pérez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989)).

When assessing the severity of mental limitations, until January 17, 2017, Social Security Regulations identified "four broad functional areas", known as "Paragraph B" criteria, which an ALJ is to use to rate the degree of Plaintiff's mental limitation: "[1] Activities of daily living; [2] social functioning; [3] concentration, persistence, or pace; and [4] episodes of decompensation." 20 CFR § 1520a(c)(3) (effective until Jan. 17, 2017).[1] In rating the degree of limitation in each of the four functional areas, the ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4) (effective until Jan. 17, 2017). If the ALJ rates the claimant's limitations as "none" or "mild" in the first three functional areas, and "none" in the fourth area, then the ALJ "will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in

---

[1] Effective March 17, 2017, the "Paragraph B" criteria have been changed and updated, requiring that the ALJ assess four broad functional areas" and "rate the degree of [the claimant's] functional limitation . . ." to "[1] [u]nderstand, remember, or apply information; [2] interact with others; [3] concentrate, persist, or maintain pace; and [4] adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A2, § 12.04B). In rating the degree of limitation in each of the four functional areas, the ALJ "will use the following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the claimant's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). Because the hearing was held on July 20, 2016 and the ALJ rendered her decision on August 25, 2016, the correct standard is the one effective until January 17, 2017.

your ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1) (effective until Jan. 17, 2017).

In this case, at step two the ALJ found that the Plaintiff suffers mild limitations in activities of daily living and social functioning. Tr. 36–37. The ALJ determined that Plaintiff suffers no limitations in concentration, persistence, or pace and that there was no evidence of episodes of decompensation. Tr. 37. Accordingly, the ALJ concluded that Plaintiff's mental condition was not severe at step two. Tr. 37. Plaintiff only challenges the ALJ's determination based on the third functional area—concentration, persistence, or pace—asserting that the evidence in the record shows that Plaintiff had poor or diminished concentration and that this error merits remand. ECF No. 22 at 17.

At step two the ALJ wrote that Plaintiff's "treatment providers generally do not describe any problems" in the areas of concentration, persistence, or pace. Tr. 37. On April 16, 2013, a progress note from Clinic "Yano" reported that Plaintiff's concentration was "[a]dequate." Tr. 253, 953. However, on May 6, 2013, Plaintiff's progress notes at Clinic "Yano" noted that although Plaintiff demonstrated intact immediate, recent, and remote memory, her concentration was "[d]iminished." Tr. 247, 949. Subsequently, progress notes from the same clinic on August 15, 2013 and November 4, 2013 report that Plaintiff's concentration was "[p]oor." Tr. 248, 250, 950, 952.[2] Such a course of events indicates that Plaintiff's concentration abilities may have worsened over time. It was therefore incorrect for the ALJ to conclude that Plaintiff had "no limitations" in concentration, persistence, or pace when there is evidence in the record from Plaintiff's treatment providers which indicates that Plaintiff had some diminished concentration abilities. While the ALJ was at liberty to weigh the above evidence she was not at liberty to

---

[2] The progress notes from Clinic "Yano" bear a physician's signature and a space for the name of a physician. However, both the written name and the signature of the physician are illegible.

ignore it and express that Plaintiff's "treatment provides generally do not describe any problems in these areas." Tr. 37.

However, in this case, the ALJ found that the Plaintiff suffered from other severe impairments; therefore, the step two inquiry is resolved in the claimant's favor and the ALJ properly moved ahead with the subsequent steps. Plaintiff is incorrect in arguing that the ALJ failed to consider Plaintiff's mental impairments when formulating the RFC, as the ALJ did discuss Plaintiff's depression and mental impairments at the RFC stage. ECF No. 22 at 19; Tr. 40. Therefore, despite having erred at step two regarding Plaintiff's abilities in concentration, persistence, and pace, the ALJ discussed Plaintiff's mental limitations when formulating the RFC, and any error was therefore harmless, as explained in detail below.

At the RFC stage, the ALJ referred to her findings at step two of the evaluation process, where she erroneously ignored evidence regarding Plaintiff's abilities in concentration, persistence, and pace. Tr. 40. Nevertheless, the ALJ concluded when formulating Plaintiff's RFC that the evidence in the record "shows mild mental symptoms" and that "some slight residual effects may remain (see finding three above), but those do not cause significant issues, as explained previously." Tr. 40.[3] Even so, other evidence to which the ALJ cited and weighed in formulating the RFC demonstrates that Plaintiff's mental condition was considered by the ALJ at the RFC stage, and that the ALJ's determination was supported by substantial evidence in accordance with 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . .").

---

[3] The ALJ labeled her step two severity findings as finding number three in her written decision. Tr. 35.

In making her mental RFC determination, the ALJ gave "significant weight" to the opinion of Dr. Luis Toro ("Dr. Toro") who conducted a psychiatric evaluation of Plaintiff on October 4, 2013. Tr. 40, 944. With regard to Plaintiff's concentration, Dr. Toro concluded that "[a]ttention, concentration, and retention are normal." Tr. 945. Dr. Toro also reported that Plaintiff informed him that the medication she was taking helped her to manage her depression symptoms and that she did cooking and housework at home. Tr. 40, 944. Dr. Toro also reported that Plaintiff's mood was "slightly depressed" but that she was calm and did not cry during the interview, and that she did not appear to be in any "physical or emotional distress." Tr. 945. Dr. Toro found "no evidence of disorganization of thoughts [sic] processes, ideas of reference, or delusions" and found that Plaintiff was "oriented as to place, person and time." Tr. 945. Dr. Toro determined that Plaintiff's immediate and remote memory was good and that she did not have any impairments to her judgment or reasoning. Tr. 945. Dr. Toro ultimately diagnosed Plaintiff with a "mood disorder" secondary to her physical ailments. Tr. 945. He communicated that Plaintiff "is able to handle funds adequately and capable of normal interpersonal relationships." Tr. 945.

The ALJ's determination is also supported by Plaintiff's subjective complaints and other evidence in the medical record. As previously mentioned, the ALJ cited her findings she made at step two when formulating the RFC and noted that "[w]hile [Plaintiff] describes some limitations in her daily activities, she attributes these to her physical (rather than mental) impairments." Tr. 40, 36. In concluding that Plaintiff does not exhibit limitations in social functioning, the ALJ cited to Plaintiff's own descriptions of her limitations where she reported to Dr. Toro that she gets along well with her husband and her neighbors and that she got along well at work with her co-workers and supervisors. Tr. 944. The ALJ also considered evidence by other medical

providers, such as a discharge note form Hospital Episcopal San Lucas on March 13, 2013 which described Plaintiff as "well oriented" and "cooperative." Tr. 776. In determining Plaintiff's abilities to concentrate and remember information the ALJ considered Plaintiff's functional report and Plaintiff's testimony at the hearing, wherein Plaintiff reported that she watched TV, listened to the radio, and took her own medication. Tr. 65, 627, 631.

The above evidence, particularly the opinion of Dr. Toro, when taken together, demonstrate that the ALJ considered Plaintiff's mental condition when formulating the RFC and that that evidence in the record is sufficient to support the substantial evidence standard. Although the Plaintiff may not agree with the ALJ's ultimate outcome, and "even if the record arguably could justify a different conclusion," a court must uphold the ALJ's decision "so long as it is supported by substantial evidence." Rodríguez Pagán, 819 F.2d at 3 (per curiam). As such, the ALJ's error at step two was harmless, and remand on that issue is not warranted.

## B.  Whether the ALJ Erred in Determining Plaintiff's RFC Hand Limitations

Next, Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC with regard to Plaintiff's hand functioning because the non-examining sources to whom the ALJ gave great weight, Dr. Pedro Nieves ("Dr. Nieves") and Dr. Ulises Meléndez ("Dr. Meléndez"), gave their opinions in October 2013 and April 2014, before Plaintiff underwent surgery on her right hand to correct carpal tunnel syndrome on May 28, 2015. ECF No. 22 at 15; Tr. 385. Plaintiff argues that "the record does not contain any medical reference to hand limitations after the 2015 surgery, yet the ALJ determined in her RFC, without the assistance of any medical source, that the Plaintiff could handle, finger, and feel frequently." ECF No. 22 at 15.

When formulating a claimant's RFC, the ALJ must base her determination on all relevant evidence, including a claimant's medical record, the medical opinions, and a claimant's

11

descriptions of her limitations. 20 C.F.R. §§ 404.1545, 404.1546. A claimant's RFC is the most she can do despite limitations from her impairments. Id. The claimant bears the burden of providing evidence to establish how her impairments limit her RFC. 42 U.S.C. § 423(d)(5)(A); Freeman, 274 F.3d at 608. However, as a lay person, "an ALJ is not qualified to interpret raw data in a medical record in functional terms." See Pérez v. Sec'y of Health & Human Servs., 958 F.2d 445, 446 (1st Cir. 1991). "[T]he ALJ must measure the claimant's capabilities and 'to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.'" See Manso-Pizarro, 76 F.3d at 17–18 (quoting Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 7 (1st Cir. 1991). "An ALJ cannot rely on raw medical data; rather, he must look to physician's opinions to translate that evidence into functional terms." Valentín-Rodríguez v. Comm'r of Soc. Sec., 2014 WL 2740410, at *7 (D.P.R. June 17, 2014). Accordingly, the First Circuit has held that "where an ALJ reaches conclusions about claimant's physical exertional capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." See Pérez, 958 F.2d at 446.

  Here, the ALJ considered the evidence in the record, including medical opinions, medical records, and Plaintiff's subjective complaints, but ultimately erred by interpreting that information into functional terms as a layperson. On August 29, 2013, Plaintiff underwent a physical exam by Dr. Nilma Rosado Villanueva ("Dr. Rosado") who assessed that Plaintiff exhibited 5/5 muscular strength in both hands, and that Plaintiff was able to grip, grasp, pinch, tap her fingers, button a shirt, pick up a coin, and write. Tr. 929. Citing this evaluation, the ALJ reported in her decision that the Plaintiff "had a full range of motion in all joints (including her

12

back) except for some slight reduction in her right shoulder." Tr. 40. The ALJ also cited the consultative evaluation conducted by Dr. Nieves, which determined on October 2, 2013 that Plaintiff's abilities in "Handling", "Fingering", and "Feeling" were "Unlimited" and that there was "no evidence of hand impairment." Tr. 40, 462, 463–464. Likewise, at the reconsideration stage on April 16, 2014, Dr. Meléndez concurred that Plaintiff was "Unlimited" in her handling, fingering, and feeling abilities and also wrote that there was no evidence of a hand impairment. Tr. 41, 484, 486. However, on May 28, 2015—nearly a year-and-a-half after Dr. Nieves' consultative evaluation and a year after the reconsideration decision—Plaintiff underwent a surgery on her right hand for her carpal tunnel syndrome. Tr. 385, 1129. In her decision, the ALJ explicitly mentions Plaintiff's surgery and cites to the record evidence regarding the surgery. Tr. 41, 385–395, 1129–1139. Furthermore, the ALJ noted that upon Plaintiff's discharge, the discharge notes indicated that Plaintiff's condition had "improved." Tr. 41, 385, 1129.

Even so, the ALJ committed reversible error in that she had no basis to translate the raw medical evidence after Plaintiff's surgery into functional terms when she could not do so as a layperson. The fact that Plaintiff underwent a surgery on her right hand for her carpal tunnel syndrome a year to a year-and-a-half after the consultative evaluation and reconsideration decision suggests that Plaintiff's condition in her right hand had worsened since those evaluations in 2013 and 2014. Tr. 385, 1129. There is no evidence in the record, nor was any evidence presented at the hearing whereby any medical source interpreted Plaintiff's condition in her right hand following her surgery into functional terms. Although Dr. Rosado assessed in August of 2013 that Plaintiff was able to grip, grasp, pinch, tap her fingers, button a shirt, pick up a coin, and write, no such opinion or testimony exists regarding Plaintiff's hand function after her surgery in May 2015. However, the ALJ did note Plaintiff's subjective complaints of her

13

hand limitations following her surgery, namely that in May 2015 Plaintiff reported experiencing continued pain and weakness in her right hand. Tr. 41, 394, 1137. The ALJ also cited Plaintiff's testimony at the hearing on July 20, 2016 during which Plaintiff stated that she experiences pain and cannot use her hands. Tr. 42, 61, 63–64.

On the basis of the above evidence, the ALJ concluded that "the record shows carpal tunnel syndrome that, will [sic] mild overall, could still cause some reduction in claimant's ability to use her hands." Tr. 41. However, there is no evidence in the record from a medical source which allowed the ALJ to make the jump from raw medical data and Plaintiff's subjective complaints to the conclusion that Plaintiff was able to "frequently handle, finger, or feel bilaterally" after her May 2015 surgery. Tr. 38. The ALJ should have elicited more information or called a medical source to explain Plaintiff's functional limitations in her hands for purposes of formulating the RFC. See Golemiewski v. Barnhart, 322 F.3d 912, 918 (7th Cir. 2003) ("Instead of ignoring the issue, the ALJ should have elicited more information to determine when Golembiewski began to have grasping problems."). Because the ALJ reached conclusions about Plaintiff's physical exertional capacity in her hands after her surgery without any assessment of residual functional capacity by a physician, "the ALJ's conclusions are not supported by substantial evidence and it is necessary to remand for the taking of further functional evidence." See Pérez, 958 F.2d at 446. Accordingly, the ALJ's decision must be remanded for a full evaluation of Plaintiff's hand limitations in functional terms from an expert medical source.

### C. The ALJ's Decision Regarding Plaintiff's Reaching Limitations and the ALJ's Decision at Step Five

The Plaintiff also challenges the ALJ's RFC determination based on Plaintiff's alleged reaching limitations with her right arm. ECF No. 22 at 11–14. However, because remand is

warranted due to errors made by the ALJ regarding involving Plaintiff's carpal tunnel syndrome at the RFC stage, the court declines to remand on a piecemeal basis and on remand the ALJ shall make a full RFC determination taking into account all of Plaintiff's physical and mental limitations. Additionally, the Plaintiff also argues that the ALJ erred at step five of the sequential evaluation process in finding that Plaintiff can perform other work available in significant numbers in the national economy. ECF No. 22 at 14. Plaintiff's argument is largely based on her arguments regarding Plaintiff's reaching limitations. ECF No. 22 at 14. However, the ALJ's determination at the RFC stage has a direct bearing upon her conclusion at step five as to whether Plaintiff is able to perform jobs in the national economy. Because the ALJ's RFC determination could change the outcome at step five, an analysis of step five is not necessary here. On remand, the ALJ shall also adjudicate all steps subsequent to the RFC determination, including the determination at step five, in accordance with her findings at the RFC stage.

## IV.     CONCLUSION

Based on the foregoing analysis, the decision of the Commissioner regarding Plaintiff's hand limitations at the RFC stage was not based on substantial evidence and failed to follow correct legal standards. Therefore, the Commissioner's decision is VACATED and the case REMANDED so that the ALJ may, *inter alia*, fully consider the evidence, including medical opinions, regarding the impact, if any, of the May 28, 2015 surgery on Plaintiff's right hand and the effect, if any, of that surgery on Plaintiff's RFC and her ability to perform any work available in significant numbers in the national economy.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 24th of August, 2022.

s/Marcos E. López  
U.S. Magistrate Judge